[No. 37624-1-I.    Division One.    June 9, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY MURPHY, *Appellant*.

*James R. Dixon* and *Nielsen & Acosta*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Shannon D. Anderson, Deputy*, for respondent.

BECKER, J. — Anthony Murphy was charged with first degree murder and second degree murder. The trial court instructed the jury that the death penalty was not involved. The jury acquitted on the first degree charge, but convicted on the second degree charge.

Except in capital cases, it is error to instruct the jury on sentencing consequences. Because the error here could not have prejudicially affected the jury's verdict of second degree murder, we hold the error was harmless, and affirm.

## FACTS

Anthony Murphy, James Perez, and Bill Sainz were homeless drug addicts who shared a crawl space under Interstate 5 overpass in downtown Seattle. On the afternoon of May 6, 1995, Sainz was murdered in the crawl space. James Perez reported the murder to the police. When police arrived, they found Sainz's body still warm, his pockets turned inside out, and his wallet and its contents—not including any money—strewn about. Physical evidence indicated that he had recently injected drugs. The autopsy showed that the cause of death was multiple wounds caused by blunt impact injuries and about 40 stab wounds.

About 40 minutes later officers arrested Murphy in nearby Freeway Park. His hands were stained with blood. Blood consistent with Sainz's blood was found on his jacket and jeans. There was also blood on money found in Murphy's pocket.

Perez testified that when he arrived "home" at about 5 o'clock on the afternoon of the murder, he found Murphy wearing bloodstained pants and removing his belongings. He inquired whether Murphy was moving out and Murphy replied that he had a fight with Sainz and stabbed

him. Murphy told Perez that Sainz, knowing Murphy was "dope sick," would not share his drugs.

Perez testified that both Sainz and Murphy were heroin and cocaine addicts. They sold small amounts of drugs to support their drug habits. They had a standing agreement to procure drugs together, and they often shared drugs with each other. A few days before the murder Sainz received his monthly check, and the two used drugs about every day during the week before the murder. But Sainz and Murphy had a falling out that week when Murphy used Sainz's money to hire a prostitute. On the night before the murder, Sainz used cocaine by himself without offering any to Murphy.

The jury acquitted Murphy of first degree murder but convicted him of second degree murder.

## DEATH PENALTY INSTRUCTION

Murphy first assigns error to the trial court's voir dire instruction telling the jury that this case did not involve the death penalty.

The judge wanted to ease potential juror concerns and prevent the jury from speculating that a conviction would lead to a death sentence. Over Murphy's objection, the court inserted an extra sentence into the standard introductory instruction:

> I would advise you that this case does not involve a death penalty. You have nothing whatever to do, however, with any punishment that may be imposed in case of a violation of the law. The fact that punishment may follow conviction cannot be considered by you except insofar as it may tend to make you careful.[1]

■ As the United States Supreme Court has noted, "It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict

---

[1]See WPIC 1.02 (underlined words added to standard instruction).

without regard to what sentence might be imposed.' "[2] Not all states have adopted this viewpoint. For instance, New Mexico's Supreme Court has upheld its courts' practice of telling the jury when the State is not seeking the death penalty:

> By present law, the jury, rather than the judge, determines the sentence in a capital felony jury trial. Thus, the jury inevitably must concern itself with sentencing in a capital case. Also, in a first degree murder case, the jury naturally wonders whether the death penalty is involved. These reasons justify modification of [the pattern instruction that jurors are not to consider the consequences of their verdict].[3]

Washington courts, however, follow the view that punishment is irrelevant to the jury's task.[4] In *State v. Todd*,[5] the trial judge instructed the jury that if it did not impose the death sentence, the court would give a life sentence under which the defendant could be paroled in 13 and 2/3 years. The jury imposed the death penalty, and the Supreme Court reversed. Where the trial judge places emphasis upon sentencing considerations the jury, "whether or not it should do so," is likely to take them into account.[6]

The State tries to distinguish *Todd* by the fact that the instruction at issue in *Todd* was given with the court's final, written instructions, whereas in the present case the instruction at issue was given during voir dire and even "enhanced" voir dire. It is a distinction without a difference.

---

[2]*Shannon v. United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975)).

[3]*State ex rel. Schiff v. Madrid*, 101 N.M. 153, 679 P.2d 821, 824 (1984) (citation omitted).

[4]*State v. Todd*, 78 Wn.2d 362, 474 P.2d 542 (1970); *State v. Forbes*, 43 Wn. App. 793, 795, 719 P.2d 941 (1986).

[5]*State v. Todd*, 78 Wn.2d 362.

[6]*Todd*, 78 Wn.2d at 376.

Only in capital cases is the sentencing decision in the hands of the jurors; and they are so instructed in capital cases. Because Murphy's potential sentence was not in the hands of the jurors, it was error to give the instruction.

Murphy contends the error is reversible per se, relying primarily on the Tenth Circuit's decision in *United States v. Greer*.[7] *Greer* is not persuasive authority for holding that an instruction about sentencing consequences is beyond the reach of harmless error analysis. As the Tenth Circuit has more recently explained, its opinion in *Greer* does not stand for the proposition that the presumption of prejudice is irrebuttable once the jury has reached its verdict.[8] Also, *Greer* addressed a situation where the jurors received information about sentencing consequences while outside the courtroom, and the decision considers the special problems attendant to holding a hearing under Federal Rule of Evidence 606(b) to determine the extent and influence of the extra-judicial contact on the jury. The present case, in contrast, involves instructional error, and the existing record is a complete record of the communication to the jury.

■■ Washington courts apply a harmless error test, assessing the impact of the instructional error on the outcome of the case:

> When the record discloses *an error in an instruction* given on behalf of the party in whose favor the verdict was returned, the error is *presumed to have been prejudicial*, and to furnish ground for reversal, unless it affirmatively appears that it was harmless. . . .
>
> A harmless error is an error which is *trivial*, or *formal*, or *merely academic*, and was not prejudicial to

---

[7]*United States v. Greer*, 620 F.2d 1383 (10th Cir. 1980).

[8]*United States v. Hornung*, 848 F.2d 1040, 1044 (10th Cir. 1988).

> the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*[9]

The State argues that the instruction that the case did not involve the death penalty, if error, was harmless because it was given in combination with the standard instruction informing the jury that it is not to take punishment into account. That position was adopted by the Supreme Court of Massachusetts in *Commonwealth v. Smallwood,*[10] also a first degree murder case. The trial judge informed the jury that, regardless of the verdict, the death penalty could not lawfully be imposed for the crime charged. But the judge also told the jury its verdict must be based solely on the evidence without regard to possible consequences. The court, "viewing the impact of the charge as a whole," concluded the trial judge had sufficiently minimized the "untoward influence" of the sentencing information, and found the error not reversible.[11]

■ We find this mode of analysis unpersuasive. To give a correct instruction along with one that is erroneous does not necessarily mitigate the prejudice caused by the erroneous one. The combined instruction here, as in *Smallwood,* sent a mixed and confusing message—essentially, "you should not consider the fact that punishment may follow conviction, but you may consider the fact that the death penalty will not follow." To hold that the erroneous instruction is never prejudicial when combined with the standard instruction would be equivalent to approving its use as long as it is so combined.

■ We are, however, persuaded that the erroneous instruction did not prejudicially affect the jury's deliberations in this case, only because the jury acquitted Murphy

---

[9]*State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977) (quoting *State v. Golladay*, 78 Wn.2d 121, 139, 470 P.2d 191 (1970)).

[10]*Commonwealth v. Smallwood*, 379 Mass. 878, 401 N.E.2d 802 (1980).

[11]*Commonwealth v. Smallwood*, 379 Mass. 878, 401 N.E.2d at 805-806.

on the charge of first degree murder. The danger presented by the instruction was its tendency to influence deliberations on the first degree murder charge. There is no reason to suppose the jury considered any particular sentencing consequences, or the lack thereof, in reaching the verdict of second degree murder. Accordingly, we hold the error was harmless.

Affirmed.

The remainder of this opinion has no precedential value. Therefore it will be filed for public record in accordance with the rules governing unpublished opinion.

BAKER, C.J., and KENNEDY, J., concur.

Reconsideration denied July 14, 1997.

Review denied at 134 Wn.2d 1002 (1998).