[No. 22421-6-II.   Division Two.   June 25, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY JAMES TOWNSEND, *Appellant*.

*Thomas Edward Doyle* and *Robert M. Quillian*; and *Patricia Anne Pethick*, for appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney*, and *David Brian St. Pierre, Deputy*, for respondent.

HUNT, J. — Roy Townsend appeals his conviction for first degree murder, arguing that: (1) defense counsel was ineffective for failing to object when the court and prosecutor informed prospective jurors during voir dire that the case did not involve the death penalty; and (2) the evidence of premeditation was insufficient. We affirm.

## FACTS

Michael Brock hosted a party on a November night in Mason County. Among the guests were the defendant, Roy Townsend, and the murder victim, Gerald Harkins. Brock was angry at Harkins for spreading unsavory rumors about Brock's sister. Brock mentioned the rumors to Townsend, who replied that "either you can deal with it or I can deal with it." Brock understood this to mean that either he would "take care of the problem or [Townsend] was gonna take care of it for [me]."

Brock did not confront Harkins then, but later Brock "brought up the idea of going out and going spotting."[1] His plan was to get Harkins outside and confront him about the rumors. But Brock changed his mind about going "spotting" so Harkins, Townsend, and another man, Jack Jellison, went without him.

After stopping to pick up a spotlight and some beer and to change clothes, the three men headed into the woods in a pickup truck, with Harkins driving. When they encountered an obstructing gate, Townsend, packing a .45 caliber pistol, climbed into the rear cargo bed of the truck; Jellison remained in the passenger's seat. Further down the road, they encountered another obstruction, a large mound of dirt. As Harkins was backing up to turn around, Jellison heard a gunshot and heard Townsend say, "[A]re you guys okay?" Jellison looked back, saw Townsend lying on the ground some distance away, and replied that they were fine. But when Harkins slumped over against his arm, Jellison realized that Harkins had been shot. Jellison jumped from the truck and exclaimed to Townsend, "[O]h, my God, you shot him. What the hell are you doing?" Townsend said it was an accident.

Townsend asked Jellison if he thought Harkins was dead; Harkins' eyes were open and he seemed to be breathing. They argued about taking Harkins to the hospital. Townsend refused, opining that with their criminal records,[2] the authorities would never believe that the shooting had been accidental. Townsend walked over to the driver's side of the truck, looked in, put the gun to Harkins' head, and pulled the trigger again, saying, "God forgive me." Townsend "dumped" Harkins' body in the woods.

By then it was early morning. Jellison and Townsend went to Townsend's house and told his roommate that Har-

---

[1]"Spotting" refers to spotlighting for deer and poaching.

[2]Townsend had prior adult convictions for burglary, possession of stolen property, unlawful possession of a firearm, and robbery. The extent of Jellison's criminal record, if any, is not contained in the record.

kins had been accidentally shot. The roommate burned Townsend's clothing and hid the gun. Townsend burned Harkins' truck in the woods. After a few days, Townsend took the gun to Yakima.

Dr. Lacsina, a forensic pathologist, performed the autopsy on Harkins' body. He noted two head wounds: a gunshot wound inflicted at "very, very close" range, which left powder burns and caused immediate death; and a "big laceration" on top of the head, which was not necessarily fatal, but could have caused death within "hours" if not treated. The State charged Townsend with nonaggravated first degree murder, a noncapital offense. RCW 9A.32.040.

At the outset of voir dire, the prosecutor and judge made the following remarks to the assembled venire, without objection from the defense:

> [PROSECUTOR]: Alright. You understand this is a criminal case, a very serious criminal case. And I'll indicate to you right now . . . I would ask the Court's indulgence. This is a first degree murder case. This case does not involve the death penalty. I think it's important that all the jurors understand that at this point in time.

> THE COURT: Thank you . . . . I had intended to let the jury know that and I'd forgotten to indicate because when you do hear the term first degree murder, a lot of people think automatically about a death penalty. This is not a case in which the death penalty is involved and will not be a consideration for the jury.

> [PROSECUTOR]: Okay, so that concept of anxiety or anticipation is not involved in this particular case. Matter of fact, under the laws of the State of Washington, the only type of murder case that involves the death penalty is aggravated first degree murder. This is not an aggravated first degree murder. This is first degree murder.

The jury convicted Townsend of first degree murder.[3]

## ANALYSIS

### I

#### INEFFECTIVE ASSISTANCE OF COUNSEL

There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions by exercising reasonable professional judgment. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856, 113 S. Ct. 164, 121 L. Ed. 2d 112 (1992); *accord State v. Benn*, 120 Wn.2d 631, 665, 845 P.2d 289 (1993). Our Supreme Court has set forth a two-part test for establishing ineffective assistance of counsel:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

*Lord*, 117 Wn.2d at 883 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Furthermore, if defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot constitute ineffective assistance. *Id.*

Under the prejudice prong, the defendant " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 883-84 (quoting *Strickland*, 466 U.S. at 694). Moreover, because the defendant must prove both ineffective assistance and resulting prejudice, a

---

[3]The jury also convicted him of arson and theft of the pickup truck, but those convictions are not challenged in this appeal.

lack of prejudice will resolve the issue without requiring an evaluation of counsel's performance. *Lord*, 117 Wn.2d at 884.

■ Townsend argues that he received ineffective representation when his lawyer failed to object to the above-quoted remarks during voir dire. He cites *State v. Murphy*, 86 Wn. App. 667, 670-71, 937 P.2d 1173 (1997), *review denied*, 134 Wn.2d 1002 (1998), in which Division One held that it is error to inform the jury during voir dire that the case does not involve the death penalty.[4] We disagree with this holding of *Murphy*.

The prospect of applying the death penalty is a staggering responsibility that many prospective jurors would not welcome. As the trial judge noted, when ordinary citizens hear that someone is charged with first degree murder, they are likely to think of the death penalty. The challenged remarks had a benign purpose—to ease jurors' anxiety that they might be asked to pronounce a death sentence. We reject *Murphy*'s assumption that this information tends to influence deliberations on a first degree murder charge. *Id.* at 673.

*Murphy* relied primarily on *State v. Todd*, 78 Wn.2d 362, 474 P.2d 542 (1970), which did not proscribe the type of instruction given in *Murphy* and in the present case. *Todd* teaches that: (1) the jury's sole function is to decide the defendant's guilt or innocence; (2) the jury should not be concerned with punishment; and (3) an instruction that places *undue emphasis* on sentencing considerations is invalid. *Id.* at 375-76. The formal instruction condemned in *Todd* explained in great detail the sentencing possibilities facing a person convicted of first degree murder for whom the jury did not impose the death penalty; the jury was instructed about the duties of the Board of Prison Terms and Paroles, the length of a minimum term, and the possibility of earning good time. *Id.* at 372-73. Accordingly, the Supreme Court held that such details unduly emphasize

---

[4]*Murphy* was decided on June 9, 1997, after Townsend's trial and, therefore, could not have provided the basis for a defense objection.

sentencing factors when the jury's role is simply to decide guilt or innocence. *Id*. at 377.

But the bare information conveyed to the jury here and in *Murphy*—simply, that the case does not involve the death penalty—does not unduly emphasize sentencing. Moreover, in *Todd* the instruction was part of the formal package read to the jury after presentation of all evidence and before retiring to deliberate. Here (and in *Murphy*), the instruction was incidental to voir dire. At the close of the evidence, the trial court made no mention of the death penalty or the possible sentence. Rather, the court instructed the jury: "You have nothing whatever to do with any punishment that may be imposed in case of a violation of the law. The fact that punishment may follow conviction cannot be considered by you except insofar as it may tend to make you careful."

We agree that generally "punishment is irrelevant to the jury's task." *Murphy*, 86 Wn. App. at 670. But we believe that *Murphy* extends *Todd* too far in holding that the trial court is prohibited from simply advising prospective jurors that they will not be asked to deal with the death penalty. In our view, such a statement at the outset of voir dire in a first degree murder case does not place *"undue emphasis"* on sentencing considerations. *Todd*, 78 Wn.2d at 376. On the contrary, such advisement should tend to quell the jury's natural speculation about the death penalty and, thus, to minimize the number of jurors seeking dismissal from jury service, thereby enhancing the array of potential jurors available to try the case. *See State ex rel. Schiff v. Madrid*, 101 N.M. 153, 679 P.2d 821, 824 (1984).

Furthermore, we are not alone in acknowledging that "in a first degree murder case, the jury naturally wonders whether the death penalty is involved." *Schiff*, 679 P.2d at 824. Although New Mexico employs the same rule as Washington, that generally "the jury [has] nothing whatever to do with the question of punishment[,]" the Use

Note to New Mexico's Uniform Jury Instructions-Criminal 50.06 recognizes "that in a capital case, the State or court may properly advise the jury that the State is not seeking the death penalty." *Id.* at 823-24. That the Washington Pattern Jury Instructions-Criminal (WPIC) do not reflect a similar note does not mean that so advising the jury is automatic error.

To establish ineffective assistance, Townsend must demonstrate prejudice resulting from counsel's acts or omissions. Even if *Todd* and *Murphy* provided grounds for objection by Townsend's lawyer, Townsend does not identify any prejudice that resulted from his failure to object, nor do we view the information conveyed as inherently prejudicial to the defense. Therefore, Townsend's claim of ineffective assistance of counsel fails.

## II
### Proof of Premeditation

■ A charge of first degree murder requires the State to prove premeditation for " 'more than a moment in point of time,' RCW 9A.32.020(1), but mere opportunity to deliberate is not sufficient to support a finding of premeditation." *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995). Premeditation is "the deliberate formation of and reflection upon the intent to take a human life" and involves "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Gentry*, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1995) (citations omitted).

In testing the sufficiency of evidence, we examine whether, after viewing the evidence and all reasonable inferences therefrom in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Id.* at 596-97. Premeditation may be proved by circumstantial evidence where the inferences drawn by the jury are reasonable and the evidence supporting the jury's verdict is substantial. *Id.* at 597.

The testimony of Brock and Jellison, together with the forensic evidence, presented sufficient evidence of premeditated killing. At Brock's party, Townsend had offered to "deal with" or "take care of" the problem Brock was having with Harkins. Townsend procured a gun and took it into the woods with Harkins and Jellison. Although Townsend claimed that the first shot was accidental, it caused a grazing scalp wound that would not have been fatal if treated; Harkins was still breathing. But Townsend did not take Harkins to the hospital. Instead, while asking for God's forgiveness, Townsend shot Harkins in the head at close range, killing Harkins instantaneously. This second, fatal shot was clearly premeditated.[5]

Affirmed.

ARMSTRONG, A.C.J., and HOUGHTON, J., concur.

Review granted at 139 Wn.2d 1009 (1999).

---

[5]*Cf. State v. Griffith*, 91 Wn.2d 572, 577, 589 P.2d 799 (1979) (premeditation where defendant had brief "discussion" with victim, produced a gun and fired a shot); *State v. Sargent*, 40 Wn. App. 340, 353, 698 P.2d 598 (1985) (premeditation where killing was "not the result of a heated argument," but the defendant had "sufficient time to pick up a weapon and deliver two separate blows" to a prone victim).