TORRE JENKINS & others[1] *vs.* CHIEF JUSTICE
OF THE DISTRICT COURT DEPARTMENT & another.[2]

Suffolk. May 4, 1993. - September 13, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Arrest. Probable Cause. Bail. Constitutional Law,* Arrest, Probable cause. *Practice, Criminal,* Probable cause hearing.

Discussion of the United States Supreme Court's conclusion in *County of Riverside* v. *McLaughlin,* 500 U.S. 44 (1991), that a judicial determination of probable cause within forty-eight hours after a warrantless arrest will, as a general matter, be sufficiently prompt to satisfy the requirement of the Fourth Amendment to the United States Constitution as expounded in *Gerstein* v. *Pugh,* 420 U.S. 103, 125 (1975). [226-228]

Discussion of the mandate, under art. 14 of the Massachusetts Declaration of Rights, with respect to judicial determination of probable cause following a warrantless arrest. [228-232]

This court concluded that art. 14 of the Massachusetts Declaration of Rights requires that a warrantless arrest must be followed by a judicial determination of probable cause no later than reasonably necessary to process the arrest and to reach a magistrate [232-233]; the court held that, in the usual circumstance, that time period is presumed to be no more than twenty-four hours [234-238].

Review of State and Federal cases and other authorities with respect to statutes and court rules governing the time period within which an arrestee must be presented to a magistrate for a probable cause determination. [234-237]

This court set forth guidelines for implementing its decision requiring a prompt determination of probable cause following a warrantless arrest. [238-245]

[1]Reginald Waller and the Committee for Public Counsel Services ("on behalf of future defendants").

[2]Chief Justice of the Boston Municipal Court Department.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 30, 1991.

The case was reported by *Wilkins*, J.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for Torre Jenkins.

*Martin R. Rosenthal* for Reginald Waller.

*LaDonna J. Hatton,* Assistant Attorney General, for the defendants.

*William J. Leahy*, Committee for Public Counsel Services, for Committee for Public Counsel Services, was present but did not argue.

LIACOS, C.J. On September 30, 1991, the plaintiffs, Torre Jenkins, Reginald Waller, and the Committee for Public Counsel Services (CPCS), petitioned a single justice of this court pursuant to G. L. c. 211, § 3 (1992 ed.), to order that all warrantless arrests in this Commonwealth be followed by a prompt judicial determination of probable cause on completion of the administrative steps incident to arrest.[3] On October 3, 1991, the defendants, the Chief Justices of the District Court and of the Boston Municipal Court Departments of the Trial Court, filed a memorandum in opposition to the plaintiffs' petition together with a motion to dismiss CPCS as an improper party. See *Slama* v. *Attorney Gen.*, 384 Mass. 620, 623-625 (1981). A hearing was held on that day, in the course of which the single justice directed the parties to prepare a joint statement of facts. In the ensuing sixteen months, the parties prepared and filed a joint stipulation of facts, a joint stipulation of agreed and unagreed facts, an appendix to such stipulation containing various documents, several affidavits, and a statement of issues for reservation and report to the full court. On February 2, 1993, the single justice reserved and reported the case on the following documents: The plaintiffs' initial petition, the defendants' motion to dismiss CPCS, the joint stipulation of facts, the appendix

---

[3]The plaintiffs requested that such probable cause determination occur no later than twenty-four hours following arrest.

to the joint stipulation, two affidavits, and the statement of issues for reservation and report.[4]

We summarize the underlying facts, which we shall supplement as relevant to a particular issue. On Friday, August 16, 1991, at 10:05 P.M., Boston police arrested Torre Jenkins without a warrant.[5] Police transported Jenkins to a Boston police station, where he was detained until the following Monday. On that day, Jenkins was brought to Boston Municipal Court for arraignment. The judge conducting the arraignment hearing set cash bail in the amount of $150.[6] Jenkins sought review of such determination in the Superior Court and, on the same day, a judge in that court ordered his admission to bail on personal recognizance without surety.

Waller was arrested without a warrant by the Boston police on a Friday evening, and detained until the following Monday. At 9 A.M. on that day, police brought Waller to the Roxbury District Court for arraignment.[7] Waller was ar-

---

[4]As framed in the report, the issues presented are these:

"1. (a) Whether the state constitution requires that a person arrested without a warrant be afforded a judicial determination of probable cause more promptly than within forty-eight hours of arrest as required under the Fourth Amendment to the United States Constitution?

"(b) If so, what is the time limit within which the judicial determination of probable cause must occur?

"2. Whether the probable cause determination must be made upon an evidentiary hearing or upon the complainant's averments as to probable cause in such form as to satisfy the standards of reliability set forth in Commonwealth v. Upton, 394 Mass. 363 (1985), or whether the probable cause determination may be made in an informal, non-adversary proceeding?"

[5]Police charged Jenkins with criminal trespass. He later admitted to sufficient facts and was found guilty. The case was then placed on file with the consent of the parties.

[6]The joint stipulation of facts does not indicate whether police had probable cause to arrest Jenkins or whether that issue was raised in the course of his arraignment.

[7]There, police filed an application for a criminal complaint charging Waller with possession of cocaine with intent to distribute and possession of cocaine with intent to distribute within 1,000 feet of a school. This application incorporated the police report pertaining to Waller's arrest. The

raigned within approximately one minute. The issue whether police had probable cause to arrest him was never raised. Waller was admitted to bail on personal recognizance without surety.

According to the parties' stipulation of facts, police in this Commonwealth adhere to the following practices with respect to a warrantless arrest. After the arrest, police transport the arrestee to a police station for processing. Police then bring the arrestee to court if the court is in session.[8] If the court is not in session, the arrestee is detained at the police station or transported to another detention facility.[9] An arrestee so detained may be admitted to bail out of court. See G. L. c. 276, § 58 (1992 ed.). Officials authorized to admit such an arrestee to bail are designated by statute. See G. L. c. 276, § 57 (1992 ed.).[10]

Detained arrestees who are not admitted to bail are brought to court at its next session. See Mass. R. Crim. P. 7 (a) (1), as amended, 397 Mass. 1226 (1986) ("A defendant

report stated that Waller was arrested "[a]s a result of information received and observation made . . . ."

[8]Before arraignment, District Court personnel must prepare a criminal complaint, conduct a probation intake interview, check the arrestee's probation record, and locate an attorney to be appointed as defense counsel to offer a bail argument.

[9]The various divisions of the District Court Department have set a time after which they will not conduct arraignments for arrests made during court hours. That time is generally between 3 and 4 P.M. if there is no judicially mandated limitation on jail occupancy, and between 1 and 2 P.M. if there is such a limitation. Arrestees brought to court before that time will be arraigned on the same day. Otherwise, arrestees must wait for the next court session.

On September 20, 1988, a single justice of this court ordered that arraignments in the divisions of the District Court Department in Suffolk County, as well as in the Boston Municipal Court, be heard no later than the end of the morning session, except in extraordinary circumstances.

[10]There are currently ninety-six bail commissioners and 216 clerk-magistrates and assistant clerks in the Commonwealth who possess such authority. The plaintiffs have alleged, by affidavits not incorporated in the single justice's reservation and report, that there exists a systemic deficiency whereby arrestees are not informed of their right to seek admission to bail, and are not afforded the opportunity to do so. See our discussion, infra at 241-242.

who has been arrested shall be brought before a court if then in session, and if not, at its next session"). If the arrest occurs on a Friday, the arrestee remains in custody for the duration of the weekend. If the following Monday should be a holiday, the arrestee remains in custody until Tuesday. Moreover, some divisions of the District Court do not hold daily sessions during the week. In those divisions, arrestees may be detained for more than four days before being brought to court.[11]

With this factual background, we turn to a discussion of the questions of law raised by this report.[12]

---

[11]The parties agree that in certain District Courts, such as Edgartown and Nantucket, the delay between arrest and arraignment may be more than four days. The parties, however, disagree as to other District Courts where the District Court does not sit daily during the week. The legal counsel to the Chief Justice of the District Court Department of the Trial Court filed an affidavit stating that, "when a particular district court is not in session, police will take unreleased arrestees to the nearest district court with a sitting judge, who arraigns such arrestees under authorization from the Chief Justice of the District Court pursuant to G. L. c. 218, § 43A. Such arrangements are not required by Mass. R. Crim. P. 7 (a) (1), however, and are viewed by District Court personnel as requiring the voluntary cooperation of the police department involved. Only in the Edgartown and Nantucket district courts, where such arrangements do not exist, may a delay in arraignment be longer than four days."

The plaintiffs dispute the accuracy of such information and contend that delays of more than four days are not limited to the Edgartown and Nantucket District Courts.

[12]In addition to these questions, see note 4, *supra*, the single justice has reported the defendants' motion to dismiss CPCS as an improper party. We need not reach the merits of such a motion because, as the defendants concede, there are two plaintiffs (Jenkins and Waller) who are entitled to advance the questions of law reported by the single justice. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 214 (1981), citing *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 674-675 (1975) (where at least one plaintiff has standing to raise issues argued on report, court need not "determine which particular plaintiff or plaintiffs are entitled to advance particular issues"). As the single justice found, the length of the plaintiffs' detention raises the issue whether a judicial determination of probable cause should have been made sooner. The warrantless arrest of the plaintiffs raises the issue of what procedures and standards should govern a postarrest determination of probable cause.

1. *Requirement of a Judicial Determination of Probable Cause Following A Warrantless Arrest Under the Fourth Amendment to the United States Constitution.*

In *Gerstein* v. *Pugh*, 420 U.S. 103, 125 (1975), the Supreme Court of the United States held that the Fourth Amendment to the United States Constitution mandates the States to "provide a fair and reliable determination of probable cause as a condition for any significant pre-trial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." The *Gerstein* Court also concluded that the existence of probable cause to arrest must "be decided by a neutral and detached magistrate," *id.* at 112, and that such a "judicial determination of probable cause [is] a prerequisite to extended restraint of liberty following arrest." *Id.* at 114.

Following *Gerstein,* Federal appellate courts disagreed as to how "promptly" a State must provide a probable cause determination following a warrantless arrest. A majority of courts understood *Gerstein* to mandate that such determination be made immediately after the completion of the administrative procedures necessitated by the arrest. See *McLaughlin* v. *County of Riverside*, 888 F.2d 1276 (9th Cir. 1989), vacated, 500 U.S. 44 (1991); *Llaguno* v. *Mingey*, 763 F.2d 1560, 1567-1568 (7th Cir. 1985) (en banc), cert. dismissed, 478 U.S. 1044 (1986); *Fisher* v. *Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1139-1141 (4th Cir. 1982). The United States Court of Appeals for the Second Circuit, on the other hand, concluded that *Gerstein* authorized the States to delay the probable cause determination in order to combine it with other pretrial proceedings. *Williams* v. *Ward*, 845 F.2d 374, 386 (2d Cir. 1988), cert. denied, 488 U.S. 1020 (1989). See Settle, *Williams v. Ward*: Compromising the Constitutional Right to Prompt Determination of Probable Cause Upon Arrest, 74 Minn. L. Rev. 196 (1989).

In *County of Riverside* v. *McLaughlin*, 500 U.S. 44, 47 (1991), the Supreme Court undertook to define "what is 'prompt' under *Gerstein*." The Court rejected the view that the Fourth Amendment requires a determination of probable

cause immediately following completion of the administrative steps incident to arrest. The Court held that principles of federalism demanded that States be given the flexibility to experiment with their criminal procedures. *Id.* at 52. Such flexibility, the Court concluded, encompassed the States' right to delay judicial determination of probable cause in order to combine it with other pretrial proceedings. The Court reasoned that, in order to ascertain the outer time limit to such delay, the State interest in "protecting public safety" should be balanced with the individual's interest in avoiding "prolonged detention based on incorrect or unfounded suspicion." *Id.* Applying this balancing test, the Court settled on a "practical compromise," *id.*, whereby "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *Id.* at 56.[13]

Four Justices dissented and expressed disagreement with the Court's conclusion that the administrative convenience of a State justifies delaying the grant of a probable cause determination to individuals arrested without a warrant. *Id.* at 59 (Marshall, J., dissenting, with whom Blackmun and Stevens, JJ., joined). *Id.* at 66-67 (Scalia, J., dissenting).[14] Justice Scalia argued that the Fourth Amendment embodied the long-standing common law rule that police must bring an arrestee to a magistrate for a neutral determination of probable cause as soon as reasonably feasible. Justice Scalia wrote that, at common law, "the only element bearing upon the reasonableness of delay was . . . the arresting officer's ability, once the prisoner had been secured, to reach a magistrate

---

[13]The Court also held that, in some circumstances, a delay of less than forty-eight hours may be unreasonable. "Examples of unreasonable delay," the Court said, "are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside* v. *McLaughlin*, 500 U.S. 44, 56 (1991).

[14]Justice Scalia's dissent extensively discussed the issues presented to the Court. In a short separate statement, Justices Marshall, Stevens, and Blackmun stated that they agreed with Justice Scalia's Fourth Amendment analysis.

who could issue the needed warrant for further detention."
*Id.* at 61. After an extensive survey of the relevant authorities, Justice Scalia concluded that States need no more than twenty-four hours to complete the administrative steps incident to arrest and to arrange for a probable cause determination by a magistrate. *Id.* at 60-66.

The plaintiffs essentially urge us to adopt as matter of State constitutional law the views stated in Justice Scalia's dissent. The defendants argue in response that the balancing test followed by the five Justices in the majority provides the construct of constitutional analysis that we should follow under the State Constitution. The defendants contend that, under this balancing test, a forty-eight hour delay between arrest and judicial determination of probable cause represents an acceptable compromise between the competing interests at stake.[15]

2. *State Constitutional Mandate With Respect to Judicial Determination of Probable Cause Following a Warrantless Arrest.*

Article 14 of the Massachusetts Declaration of Rights, adopted by the people in 1780, provides:

"Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and

---

[15]The defendants acknowledge that, in some districts of this Commonwealth, the forty-eight hour Federal constitutional mandate is not respected. In the view that we take under the State Constitution, such violations of the Federal Constitution are subsumed by our disposition of the case.

no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."[16]

As we do with other provisions of the State Constitution, we construe the language of this constitutional provision "in light of the circumstances under which it was framed, the causes leading to its adoption, the imperfections hoped to be remedied, and the ends designed to be accomplished." *General Outdoor Advertising Co.* v. *Department of Pub. Works*, 289 Mass. 149, 158 (1935). See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 144-145 (1980), cert. denied, 451 U.S. 973 (1981).

It is well known that art. 14 was adopted to prohibit the abuse of official power brought about by two devices which the British Crown used in the colonies: the general warrants and the writs of assistance. See Stewart, The Road to *Mapp* v. *Ohio* and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search-and-Seizure Cases, 83 Colum. L. Rev. 1365, 1368-1371 (1983) (reviewing the historical roots of the Fourth Amendment and of cognate provisions of certain State Constitutions). See also *Cundriff*, *supra* at 143-145. The general warrants empowered their holder to seize and burn books or other printed matter deemed "offensive to the state." Stewart, *supra* at 1369. The writs of assistance were a special kind of general warrant which permitted their bearer, usually a customs official, to search with unlimited discretion for smuggled goods without special application to a court. See 2 Legal Papers of John Adams 108 (L. Wroth & H. Zobel eds. 1965).[17] See also Stewart, *supra* at 1370.

---

[16]It is by now firmly established that, in some circumstances, art. 14 affords greater protection against arbitrary government action than do the cognate provisions of the Fourth Amendment. See *Horsemen's Benevolent & Protective Ass'n* v. *State Racing Comm'n*, 403 Mass. 692, 702-703 (1989); *Commonwealth* v. *Blood*, 400 Mass. 61, 67-74 (1987); *Commonwealth* v. *Ford*, 394 Mass. 421, 426-427 (1985); *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985).

[17]In England, the term "writ of assistance" originally referred to the process whereby a litigant in the Court of Exchequer or in Chancery

The crux of the colonists' objection to these legal devices was the unchecked control over the liberty of the people which they vested in law enforcement officers. In the famed Petition of Lechmere, argued in 1761, James Otis presented a theory of American jurisprudence which embodied the colonists' position and formed the conceptual basis of art. 14.[18] See *Cundriff*, *supra* at 144. See also 2 Legal Papers of John Adams, *supra* at 106-147. "[E]very one with this writ may be a tyrant," Otis argued. "If this commission is legal, a tyrant may, in a legal manner also, controul, imprison or murder any one within the realm. [Being] accountable to no persons for his doings, every man may reign secure in his petty tyranny, and spread terror and desolation around him, until the trump of the arch angel shall excite different emotions in his soul." *Id.* at 142. Such evils, Otis concluded, would only be remedied if a neutral judiciary controlled governmental interference with the liberty of the people: "[A]n officer should show probable grounds, should take his oath on it, should do this before a magistrate, and . . . such magistrate, if he thinks proper should issue a *special warrant* to a constable to search the places" (emphasis in original). *Id.* at 144.

John Adams, the principal author of our Constitution, sat in the courtroom and wholeheartedly embraced Otis's argument. *Id.* at 107. See Stewart, *supra* at 1371. "Otis lost his case, but his side was to win the war. Throughout the colonies, opposition to the writs mounted in the wake of Otis's words, and courts proved increasingly reluctant to issue them." *Id.* at 1370-1371.[19]

---

would obtain the assistance of the sheriff in collecting a debt or gaining possession of property. See 2 Legal Papers of John Adams 107 (L. Wroth & H. Zobel eds. 1965).

[18]That case arose because the writs of assistance were good from the time of their issuance until six months after the death of the monarch. When King George II died in 1760, it thus became necessary for the British authorities to obtain new writs of assistance. See 2 Legal Papers of John Adams, *supra* at 112.

[19]The American rejection of arrests and searches without cause "was also greatly influenced by the *lettres de cachet* extensively used in France. This was an order emanating from the King and countersigned by a minister directing the seizure of a person for purposes of immediate imprison-

The language and structure of art. 14 reflects John Adams's adoption of Otis's views. Beginning with the prohibition of "unreasonable" searches and seizures, art. 14 moves on to define the fundamental components of a constitutionally reasonable search or seizure: First, magistrates — rather than law enforcement agents — control the decision whether to effectuate a search and seizure, including the seizure or arrest of a person. Second, law enforcement agents bear the burden of justifying their intrusion into a person's freedom by presenting the magistrate with sufficient grounds to support the search or the seizure. These two elements are the essence of the constitutional norm regarding searches and seizures, today no less than in 1780.

The warrantless arrest of a person is a circumscribed exception to this norm which was carved by the common law in order to "protect public safety by making a prompt arrest." *Draper* v. *United States*, 358 U.S. 307, 315-316 (1959)

---

ment or exile. The ministers issued the *lettres* in an arbitrary manner, often at the request of the head of a noble family to punish a deviant son or relative. See Mirabeau, A Victim of the Lettres de Cachet, 3 Am. Hist. Rev. 19. One who was so arrested might remain incarcerated indefinitely, as no legal process was available by which he could seek release. . . . As Blackstone wrote, '. . . if once it were left in the power of any, the highest, magistrate to imprison arbitrarily whomever he or his officers thought proper, (as in France it is daily practiced by the crown,) there would soon be an end of all other rights and immunities.' I Commentaries (4th Ed. Cooley) *135." *Draper* v. *United States*, 358 U.S. 307, 317-318 (1959) (Douglas, J., dissenting). John Adams returned to Massachusetts from France only two months before he drafted the Declaration of Rights. See Cella, The People of Massachusetts, A New Republic, and the Constitution of 1780: The Evolution of the Principles of Popular Control of Political Authority 1774-1780, 14 Suffolk U.L. Rev. 975, 998 (1980). His thinking on searches and seizures no doubt was influenced also by his observation of the French practices of the time.

We note that the National Assembly of the French Republic recently adopted a law overruling a prior decision of France's highest court and authorizing police to stop citizens without cause for "preventive identity controls." Le Monde, Trois Réformes Pour le Contrôle de l'Immigration, July 14, 1993; Le Monde, Les Travaux du Parlement, July 13, 1993. To this day, the constitutional principles embodied in art. 14 distinguish our society from other Western democracies.

(Douglas, J., dissenting). See *Rohan* v. *Sawin*, 5 Cush. 281, 283 (1851). For the British common law roots of such practice, see 1 M. Hale, Pleas of the Crown 587 (1800). Once the arrestee was secured, however, the rationale for the exception vanished, and the common law rule required that the arrestee be brought to a magistrate as soon as such magistrate reasonably could be made available. *Keefe* v. *Hart*, 213 Mass. 476, 482 (1913).[20] Accord *Tubbs* v. *Tukey*, 3 Cush. 438, 440 (1849). See Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 254 (1940); 2 M. Hale, Pleas of the Crown 119 (1800); 4 Blackstone, Commentaries *289, *292-*293. Detention of the arrestee for an unreasonable period of time subjected the arresting officer to tort liability for false imprisonment. See, e.g., *Keefe* v. *Hart*, *supra*. Most importantly, the sole element bearing on the reasonableness of such delay was the officer's duty, once the arrest completed, to make a magistrate available. *Id.* at 481-482. See Restatement of Torts § 134 comment b (1934). See also *County of Riverside* v. *McLaughlin*, 500 U.S. 44, 60 (1991) (Scalia, J., dissenting), and cases cited.

We conclude that art. 14 embodies the common law guarantee that a warrantless arrest must be followed by a judicial determination of probable cause no later than reasonably necessary to process the arrest and to reach a magistrate.

---

[20]This common law concept finds its echo in the constitutional language of the Court in its interpretation of the Fourth Amendment when Justice Powell wrote: "Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty." *Gerstein* v. *Pugh*, *supra* at 113-114. We attach the same historical underpinnings to our view of the mandate of art. 14.

The historical background to the adoption of art. 14 evinces the intent of its framers to afford the citizens of this Commonwealth at least as much protection regarding a warrantless arrest as was provided by the common law. Cf. 2 J. Story, Commentaries on the Constitution 609 (1833). Accord *Aime* v. *Commonwealth*, 414 Mass. 667, 677 (1993).

As explained above, art. 14 guarantees that control over one's liberty will rest solely in the hands of the judiciary, whose function it is to guarantee that sufficient grounds to justify such deprivation exists. Detaining presumptively innocent arrestees for the sake of administrative efficiency, and after the justification for their warrantless arrest has evaporated, strikes at the core of this constitutional guarantee. Leaving aside the widespread complaints over the poor conditions of detention facilities, see, e.g., Comment, The Forty-Eight Hour Rule and *County of Riverside v. McLaughlin*, 72 B.U.L. Rev. 403, 408 & n.35 (1992),[21] prolonged detention "may imperil the suspect's job, interrupt his source of income, and impair his family relationships" (citations omitted). *Gerstein, supra* at 114. A warrantless arrest being the exception to the norm established by art. 14, it follows that, once the exigency that gave rise to such exception has faded, judicial control over whether an individual's liberty should be disrupted must be reestablished promptly.[22]

---

[21]The plaintiffs have filed affidavits alleging mistreatment of certain arrestees. Those facts were not admitted to by the defendants, and not incorporated in the single justice's report of the case.

[22]We disagree with the defendants' claim that the adoption of a State habeas corpus statute in 1784 belies the framers' intent that arrestees should receive a probable cause hearing on completion of the administrative steps necessary to process the arrest and to reach a magistrate. The defendants base their argument on the fact that, at the time of its enactment, the habeas corpus statute required that an arrestee kept in detention be brought to court within either three, ten, or twenty days. After the arrestee was brought to court, the defendants add, the court was directed to hold a hearing within three days. See St. 1784, c. 72.

The habeas corpus statute did not create the substantive right to the probable cause hearing. Rather, this statute created a procedure whereby higher courts could review the initial determination of probable cause, which itself had to be done immediately after the arrest. See *Gerstein* v. *Pugh*, 420 U.S. 103, 114-115 (1975), and authorities cited.

Having concluded that the only element bearing on the reasonableness of the delay between a completed arrest and a judicial determination of probable cause is the time reasonably necessary to reach a magistrate, we turn to the issue of the outermost time limit to such delay. We pause to note that, ordinarily, constitutional adjudication yields general principles of law rather than a precise rule such as the time limit on the length of an arrestee's detention. See Comment, *supra* at 412. The present case presents an exception because "[a]ny determinant of 'reasonable promptness' that is within the control of the State (as the availability of the magistrate, the personnel and facilities for completing administrative procedures incident to arrest, and the timing of 'combined procedures' all are) must be restricted by some outer limit, or else the promptness guarantee would be worthless." *County of Riverside, supra* at 67 (Scalia, J., dissenting). "Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds." *Id.* at 56 (opinion of the Court). Declining to reach the issue would amount to inviting future litigation.[23]

The plaintiffs argue that a twenty-four hour time limit fairly reflects the time reasonably necessary to reach a magistrate. The statutes of our sister States, the numerous cases on the issue that were engendered by the Supreme Court's decision in *Gerstein*, and scholarly commentary provide sufficient data for us to consider the question.

Every State in the country has a statute or rule governing the presentment of an arrestee to a magistrate for a probable cause determination. See Brandes, Post-Arrest Detention and

[23]The defendants rely on Mass. R. Crim. P. 7 (a), as amended, 397 Mass. 1226 (1986), and on the cases which this rule codifies, for the proposition that the period within which an arrestee must be presented to a magistrate must be flexible. As explained, however, we must give substance to the constitutional principles announced today by choosing an outer time limit which reflects the time reasonably necessary in today's society to reach a magistrate.

the Fourth Amendment: Refining the Standard of *Gerstein* v. *Pugh*, 22 Colum. J.L. & Soc. Probs. 445, 474-475 (1989). A number of States require that such presentment be made within twenty-four hours of arrest: One State requires that it be done within twenty hours.[24] Seven States require that it be done within twenty-four hours.[25] *Id.* at 478-479 n.230. Twenty-eight States and the District of Columbia have statutes requiring presentment or arraignment "without unnecessary delay" or "forthwith."[26] "[S]tate courts have . . . applied a 24-hour limit under state statutes requiring presentment without 'unreasonable delay.' New York, for example, has concluded that no more than 24 hours is necessary from arrest to *arraignment, People ex rel. Maxian* v. *Brown,* [164 A.D.2d 56, 62-64 (1990), aff'd, 77 N.Y.2d 422 (1991)]" (emphasis in original). *County of Riverside, supra* at 69 (Scalia, J., dissenting). Accord *Sanders* v. *Houston,* 543 F. Supp. 694, 703, 705 (S.D. Tex. 1982), aff'd, 741 F.2d

---

[24]See Mo. Rev. Stat. § 544.170 (1991).

[25]See Alaska Stat. § 12.25.150 (1992); Ariz. R. Crim. P. 4.1 (a) (1992); Del. Code Ann. tit. 11, § 1909 (1987); Fla. R. Crim. P. 3.130 (1993); Ind. Code § 36-8-3-11 (1992); Md. R. Crim. P. 4-212 (f) (1993); N.H. Rev. Stat. Ann. § 594:20-a (1991). Of these seven States, two (Delaware and New Hampshire), exclude Sundays and holidays and one (Indiana) excludes Sundays from the computation of the twenty-four hour time limit.

[26]See Ala. Code § 15-10-7(e) (1982); Ark. Stat. Ann. § 16-85-201 (1987); Colo. Rev. Stat. § 16-2-112 (1986) (for misdemeanor arrestee); D.C. Code Ann. § 23-562 (c) (1) (1989); Idaho Code § 19-615 (1987); Ill. Rev. Stat. c. 725, § 5/109-1 (Smith-Hurd. 1992); Iowa Code Ann. § 804.22 (1993); Kan. Stat. Ann. § 22-2901 (1988); Ky. R. Crim. P. 3.02 (1993); Mich. Comp. Laws Ann. § 764.13 (1982); Miss. Code Ann. § 99-8-17 (1973 & Supp. 1993); Mont. Code Ann. § 46-7-101 (1991); Nev. Rev. Stat. § 171.1771 (1991); N.J.R. Crim. Prac. 3:4-1(a) (1992); N.M. Stat. Ann. § 31-1-5(B) (1984); N.Y. Crim. Proc. Law § 140.20 (1986 & Supp. 1992); N.C. Gen. Stat. § 15A-511 (a) (1) (1988); N.D. Cent. Code § 29-06-25 (1991); Ohio Rev. Code Ann. § 2935.05 (1991); Okla. Stat. Ann. tit. 22, § 181 (1991); Or. Rev. Stat. § 133.787 (1991); Pa. R. Crim. P. 130(a) (1992); S.D. Codified Laws Ann. § 23A-4-1 (1988 & Supp. 1993); Tex. Crim. Proc. Code art. 14.06 (1973 & Supp. 1993); Utah Code Ann. § 77-7-23 (1) (a) (Michie 1990); Vt. R. Crim. P. § 3 (b) (1992); Va. Code Ann. § 19.2-82 (1992 & Supp. 1993); W. Va. Code § 62-1-5 (1992); Wyo. R. Crim. P. 5 (a) (1991).

1379 (5th Cir. 1984) (construing *Gerstein* and Texas presentment statute to require appearance of arrestee before magistrate no later than twenty-four hours after arrest). Only seven States explicitly authorize detention for more than twenty-four hours: Four States have settled on a forty-eight hour time limit,[27] one State on a thirty-six hour time limit,[28] and, before *County of Riverside* undermined the constitutionality of their statutes or rules, two States authorized detention for up to seventy-two hours.[29] One State authorizes detention "one night or longer."[30] See also Brandes, *supra*.[31]

Most Federal cases decided in the wake of *Gerstein* have concluded that twenty-four hours provides a reasonable amount of time within which to complete arrest procedures. See, e.g., *Bernard* v. *Palo Alto*, 699 F.2d 1023, 1025 (9th Cir. 1983) (affirming District Court's conclusion that no more than twenty-four hours needed to complete such procedures as "eminently reasonable"). See also *McGill* v. *Parsons*, 532 F.2d 484, 485 (5th Cir. 1976); *Sanders, supra* at 703; *Dommer* v. *Hatcher*, 427 F. Supp. 1040 (N.D. Ind. 1975), rev'd in part, 653 F.2d 289 (7th Cir. 1981). Accord *Lively* v. *Cullinane*, 451 F. Supp. 1000 (D.D.C. 1978) (holding that one and one-half hours is longest period arrestee can be detained without presentment). This conclusion is in accord with that reached by the American Law Institute. See

---

[27]See Cal. Penal Code § 825 (West 1985 & Supp. 1993) ("two days," excluding Sundays and holidays); Haw. Rev. Stat. § 803-9(5) (1985); Me. R. Crim. P. 5(a) (1992) (excluding Saturdays, Sundays, and holidays); Wash. Super. Ct. Crim. R. 3.2A(a) (1993).

[28]See Minn. R. Crim. P. 4.02(5) (West 1993) (excluding Sundays and legal holidays).

[29]See Ga. Code Ann. § 17-4-26 (1990); La. Code Crim. Proc. Ann. art. 230.1 (West 1991) (presentment for purpose of appointment of counsel).

[30]See Neb. Rev. Stat. § 29-410 (1989).

[31]Six States, including Massachusetts, have probable cause statutes or rules that do not fall within any of these categories. See Mass. R. Crim. P. 7. See also Conn. Gen. Stat. Ann. § 54-1f (d) (West 1985 & Supp. 1993) ("reasonable promptness"); R.I. Gen. Laws § 12-9-17 (1981); S. C. Code Ann. § 17-13-10 (1985); Tenn. Code Ann. § 40-5-103 (1992); Wis. Stat. Ann. § 970.01 (1) (1992).

Model Code of Pre-Arraignment Procedure § 310.1, at 187 (1975) ("Any person who has been arrested and has not been released by the station officer . . . shall be brought before a court at the earliest time after the arrest that a judicial officer . . . is available and in any event within 24 hours after the arrest"). "[T]he American Bar Association in its proposed rules of criminal procedure initially required that presentment simply be made 'without unnecessary delay,' [but] it has recently concluded that no more than six hours should be required, except at night. Uniform Rules of Criminal Procedure, 10 U.L.A. App., Criminal Justice Standard 10-4.1 (Spec. Pamph. 1987)." *County of Riverside, supra* at 69-70 (Scalia, J., dissenting). Finally, scholarly commentary has uniformly confirmed the proposition that no more than a twenty-four hour period is required to process an arrest and to reach a magistrate. See Comment, *supra* at 413; Brandes, *supra* at 478-485; Settle, *Williams v. Ward*: Compromising the Constitutional Right to Prompt Determination of Probable Cause Upon Arrest, 74 Minn. L. Rev. 196, 223 (1989).

Our review of these authorities leads us to conclude that there is widespread agreement that the Commonwealth needs no more than twenty-four hours to provide such a determination following a warrantless arrest.[32] We have concluded that, under our State Constitution, the sole element bearing on the delay between a processed arrest and such a determination is the time reasonably needed to reach a magistrate.

---

[32]Relying on language found in *Aime* v. *Commonwealth*, 414 Mass. 667, 684 (1993), the defendants have argued that the systemic implications of a twenty-four hour rule should preclude us from holding that art. 14 mandates such a rule. The defendants' reliance on *Aime* is misplaced. In that case, we declined to construe the amended bail statute to incorporate by implication the procedures mandated by the United States Constitution. We did so because we left it to the Legislature, which drafted the amended bail statute without referring to such procedures, to decide whether to impose on the criminal justice system the substantial burden which those procedures would have occasioned. Unlike *Aime*, the present case does not require us to decide whether we should "save" a statute by construing it to comport with the Constitution. Rather, the question presented is whether the Constitution itself requires the implementation of additional procedures in the criminal justice system.

In light of the data that we have reviewed, we hold that, in the usual circumstance, no more than a twenty-four hour time period is needed to reach the magistrate. In order to accommodate unforeseeable circumstances, we shall treat this time limit as a presumption: Where it is exceeded, the police must bear the burden of demonstrating that an extraordinary circumstance caused the delay. See *County of Riverside, supra* at 57 (opinion of the Court); *id.* at 70 (Scalia, J., dissenting).[33]

3. *Disposition.*

Our conclusions of constitutional law today have intricate systemic implications. The plaintiffs contend that, under the current practice in this Commonwealth, there is no standard procedure to determine whether a warrantless arrest was supported by probable cause. The plaintiffs have articulated rather specific proposals to remedy this alleged systemic deficiency and the constitutional violations as to the time period within which a probable cause determination must be provided. The defendants have suggested that, regardless of which outermost time limit we place on the delay between arrest and the determination of probable cause, we should allow those who administer our criminal justice system sufficient flexibility to experiment with procedures that would satisfy the constitutional mandate.

We shall chart broadly the bounds within which our decision must be implemented. "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule." *Marbury* v. *Madison,* 5 U.S. (1 Cranch) 137, 177 (1803). The use of modern technological means to protect individual rights, see, e.g., 21 Mass. Law. Wkly. No. 42, July 5, 1993, at 1, 32 (describing implementation of a video bail system aimed at easing over-

---

[33]Examples of such exigency would be a major snow storm or similar weather conditions precluding timely access to a magistrate, or where the defendant is hospitalized or in a physical condition precluding a timely appearance before a magistrate.

crowding in pretrial detention facilities),[34] would be hampered by excessively specific directions by this court based on incomplete data.

In sum, the ensuing discussion sets forth the following guidelines. An arrestee promptly released on bail is not entitled to a prompt postarrest determination of probable cause. Such determination, when constitutionally required, is governed by the same legal standards as apply to the issuance of a warrant. A magistrate who is sufficiently "neutral and detached" may make the probable cause determination; there is no requirement that a judge make such determination. The probable cause determination may be made at an ex parte hearing, at which the arrestee is not entitled to the assistance of counsel. The arresting officer's documentation of probable cause may be oral or written, and must satisfy the explicit "oath" or "affirmation" requirement of art. 14. The determination of probable cause need not be reviewed at arraignment.

a. *The Relationship Between Bail Releases and Postarrest Probable Cause Determinations.*

The Massachusetts bail statute, G. L. c. 276, § 58 (1992 ed.), seeks "to protect the rights of the defendant by establishing a presumption that he or she will be admitted to bail on personal recognizance without surety and by delineating carefully the circumstances under which bail may be denied." *Delaney* v. *Commonwealth*, 415 Mass. 490, 495 (1993). Section 58, first par., provides that an official authorized to admit an arrestee to bail[35] "shall, when a prisoner is held under arrest or committed either with or without a warrant for an offense other than an offense punishable by death . . . hold a hearing in which the defendant and his counsel, if any, may participate and inquire into the case and shall admit such person to bail . . . unless said [official] determines,

---

[34]Cf. Minn. R. Crim. P. 4.03 (West 1993) (facts establishing probable cause for warrantless arrest may be submitted orally, in writing, or by facsimile transmission, video equipment, or similar device).

[35]General Laws c. 276, § 57 (1992 ed.), defines such officials.

in the exercise of his discretion . . . that such a release will not reasonably assure the appearance of the prisoner before the court."[36] We recently have noted that there are over 100,000 bail releases a year in police stations and county jails. *Aime* v. *Commonwealth*, 414 Mass. 667, 684 (1993).

The plaintiffs have raised two broad issues relating to the relationship between § 58 and the issues in the present case. First, the plaintiffs have suggested that a judicial determination is required even if an arrestee is released on bail before the constitutionally required time limit on detention following a warrantless arrest (twenty-four hours). The plaintiffs contend that the conditions of bail, and the existence of a criminal complaint pending against the defendant, justify such determination.[37] The defendants argue in response that probable cause determinations need be made only in the case of pretrial detention.

We agree with the defendants. In *Gerstein* v. *Pugh*, 420 U.S. 103, 123 (1975), the Supreme Court stated that the "Fourth Amendment probable cause determination is addressed only to pretrial custody." See *County of Riverside* v. *McLaughlin*, 500 U.S. 44, 54-55 (1991). Nothing in art. 14 requires us to conclude otherwise. As explained above, art. 14 guarantees that citizens will not be deprived of liberty for a period longer than necessary to obtain judicial review of the grounds for such deprivation. Where an individual is released within the constitutionally acceptable time, the rationale for requiring a probable cause determination vanishes.

---

[36]General Laws c. 276, § 58 (1992 ed.), directs the official making the bail determination to consider certain enumerated factors.

Section 58 was amended by St. 1992, c. 201. Certain portions of the 1992 amendments to § 58 have been declared unconstitutional under the Federal Constitution. *Aime* v. *Commonwealth*, 414 Mass. 667 (1993).

[37]In their brief, the plaintiffs argue that, because "the conditions of bail and the very fact of a criminal complaint hanging over one's head can be onerous, an initial determination of probable cause should still be available either upon issuance of the complaint or at the arraignment." At oral argument, the plaintiffs appeared to concede that timely release on bail would eliminate the need for a judicial determination of probable cause. We shall, nonetheless, address the argument presented in their brief.

Accord *Bond* v. *United States,* 614 A.2d 892, 900-901 n.18 (D.C. 1992) (no probable cause determination needed where arrestee indicted for other offense prior to arrest because probable cause to detain him exists).

Next, the plaintiffs raise several interrelated issues pertaining to the administration of § 58. The plaintiffs allege that some arrestees "are not notified of their right to bail hearing, under § 58, while for others bail is set without any meaningful hearing." The plaintiffs contend that the Superior Court rules governing the admission of arrestees to bail do not guarantee the proper administration of § 58. The plaintiffs claim that "these rules include no requirement of a bail determination for everyone; no process to decide when or how the bail commissioners are called to the police stations; no process for notifying the detainees about the 'hearing'; no procedure governing the hearing or the determination of bail; no process for notice to the detainee of his/her bail; no record of the proceeding."

In order to solve the problems that they claim to have identified, the plaintiffs urge us to promulgate rules establishing procedures for the administration of § 58. Moreover, the plaintiffs suggest that the bail commissioners and clerk-magistrates authorized to admit arrestees to bail out-of-court should be employed to make the requisite probable cause determination.

The short answer to the plaintiffs' argument that § 58 is not being administered according to its letter and spirit is that the issue is not before us. Aside from the fact that the defendants did not agree to the plaintiffs' characterization of the manner in which bail releases are conducted, this issue is only peripheral to the questions reported by the single justice. As to the plaintiffs' suggestion that officials authorized to admit arrestees to. bail out of court should determine also whether probable cause to arrest existed, it falls under the

rubric of proposals that are best left to the consideration of those who will implement our decision today.[38]

b. *The Standards Governing the Probable Cause Determination and the Procedures Required at the Hearing.*

The parties have disagreed as to which legal standards and procedures should govern the judicial determination of probable cause. The plaintiffs argue that the probable cause determination should be based on a written, or electronically preserved, statement made under oath by the arresting officer. Also, the plaintiffs argue that any determination of probable cause made by a magistrate prior to arraignment should be reviewed by the judge conducting the arraignment. Relying on the rule that warrants may be issued pursuant to the oral testimony of an officer, the defendants dispute the plaintiffs' contention that a postarrest probable cause determination must be based on a written statement. The defendants also argue that the probable cause determination need not be reviewed at arraignment.

"Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime." *Commonwealth* v. *Gullick,* 386 Mass. 278, 283 (1982). "We have equated the word 'cause' in art. 14 with the words 'probable cause.' *Commonwealth* v. *Dana,* 2 Met. 329, 336 (1841). In each case, the basic question for the magistrate is whether he has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched . . . . Strong reason to suspect is not adequate." (Citations omitted.) *Commonwealth* v. *Upton,* 394 Mass. 363, 370 (1985). Such familiar probable cause principles essentially require that a set of facts more probably than not indicates criminal activity or evidence thereof.

---

[38]We intimate no view on the defendants' argument that those officials are not sufficiently "neutral and detached" to make such determination, and that some of them are not schooled in the requirements of probable cause. See *Gerstein* v. *Pugh,* 420 U.S. 103, 112 (1975).

The constitutional requirement that a prompt determination of probable cause be made following arrest is necessary to reestablish the judicial check over the seizure of an individual by the police. It follows that a warrantless arrest will be constitutionally permissible if such arrest was based on facts within the knowledge of the officer which, but for the exigency, would have supported the issuance of an arrest warrant under our relevant case law. Accord *Commonwealth v. Pietrass*, 392 Mass. 892, 897-898 (1984), citing *Julian* v. *Randazzo*, 380 Mass. 391, 395 (1980) (same principles governing determination of probable cause apply to arrest warrants and warrantless arrests); *Gerstein, supra* at 120 ("The standard is the same as that for arrest"). Accordingly, the familiar principles governing probable cause to support the issuance of a warrant should govern the postarrest determination of probable cause.

The principle that a postarrest determination of probable cause reestablishes a neutral check on government interference with one's physical freedom provides the unifying principle for the remainder of our conclusions. Thus, like the issuance of a warrant, the postarrest determination need not necessarily be made by a judge. See *Commonwealth* v. *Smallwood*, 379 Mass. 878, 885 (1980) ("While District Court judges are authorized to receive complaints and issue warrants, G. L. c. 218, § 32, a clerk or assistant clerk may also receive complaints, administer the required oath, and issue warrants in the name of the court. G. L. c. 218, § 33. *Commonwealth* v. *Penta*, 352 Mass. 271, 273 [1967]").[39] The Supreme Court has held that, under the Fourth Amendment, a determination of probable cause may be made by a "neutral and detached" magistrate, who must be "capable of

---

[39]General Laws c. 218, § 33 (1992 ed.), provides, in part: "A clerk, assistant clerk, temporary clerk or temporary assistant clerk, may receive complaints, administer to complainants the oath required thereto, and issue warrants, search warrants and summonses . . . ."

The Legislature may of course empower other officials to issue warrants or make postarrest determinations of probable cause, so long as such officials meet the constitutionally required qualifications, described below.

determining whether probable cause exists for the . . . arrest or search." *Shadwick* v. *Tampa*, 407 U.S. 345, 350 (1972). See *Gerstein, supra* at 112. Neutral review of the grounds for an arrest is the crux of art. 14. A competent, neutral, and detached magistrate may make the postarrest determination of probable cause.[40]

Like the complaint and arrest procedure, the postarrest determination of probable cause may be made in an ex parte proceeding. See *Commonwealth* v. *Smallwood, supra* at 885 (complaint and arrest procedure customarily ex parte). So long as the explicit "oath" or "affirmation" requirement of art. 14 is met, the arresting officer's documentation of probable cause need not be made in writing.[41] See *Commonwealth* v. *Baldassini*, 357 Mass. 670, 676-677 (1970) (art. 14 authorizes issuance of warrant based on oral testimony under oath of arresting officer).[42] A postarrest determination of probable cause may be made at an informal hearing within the guidelines established in *Gerstein* v. *Pugh, supra.* This approach accords with the teaching of *Commonwealth* v. *Smallwood, supra* at 885-886, that the complaint and warrant procedure is not an adversary one. Accordingly, the arrestee is not enti-

---

[40]We have used throughout our discussion the term "*judicial* determination of probable cause." As the Supreme Court of the United States has explained, the word "judicial" does not imply that the determination need be made by a judge. The word merely connotes the neutral nature of the official making the probable cause determination. See *Shadwick* v. *Tampa*, 407 U.S. 345, 349-350 (1972).

[41]Of course, probable cause may be documented in writing. The plaintiffs' suggestion that the arresting officer include the facts providing probable cause in his or her arrest report, or use a special probable cause form such as those proposed for use by the Los Angeles police department, may provide practically feasible means of implementing our decision.

[42]We disagree with the plaintiffs' argument that the postarrest judicial determination of probable cause need be reviewed at the arraignment of the arrestee. As is the case for the issuance of a warrant where probable cause does not exist, the remedy for an erroneous postarrest determination of probable cause may lie in a motion to suppress any evidence derived from the arrest, or by a challenge to the continued detention of the arrestee.

tled to the assistance of counsel during the postarrest probable cause hearing.

We also note that the informal nature of the probable cause hearing does not conflict with cases such as *Myers* v. *Commonwealth*, 363 Mass. 843 (1973), which requires fully developed adversary procedures in a hearing on probable cause to bind a defendant over for trial. "[T]here is a 'large difference' between probable cause to arrest [or search] and probable cause to bind over, 'and therefore a like difference in the quanta and modes of proof required to establish them.' . . . A judicial finding of probable cause to arrest validates only the initial decision to arrest the suspect, not the decision made later in the criminal process to hold the defendant for trial." *Id.* at 849, quoting *Brinegar* v. *United States*, 338 U.S. 160, 173 (1949).

Finally, we note that the procedures followed in some of our sister States may provide useful guidance to those who will implement our decision. See, e.g., La. Code Crim. Proc. art. 230.2 (West 1993) (arresting officer shall promptly complete affidavit of probable cause and submit it to magistrate; probable cause determination may be made by magistrate in ex parte and nonadversary proceeding, upon affidavits or other written evidence); Minn. R. Crim. P. 4.03 (West 1993) (facts establishing probable cause shall be submitted upon oath either orally or in writing; oral testimony shall be recorded and retained by judge or judicial officer or by judicial officer's designee; any written or oral facts or other information submitted to establish probable cause may be made by telephone, facsimile transmission, video equipment, or similar device).[43]

4. *Conclusion.*

The case is remanded to the Supreme Judicial Court for the county of Suffolk for entry of a declaratory judgment consistent with this opinion. The single justice may, in his or

---

[43]Some States require that the arrestee be brought to a magistrate for the postarrest determination of probable cause. See, e.g., R.I. Gen. Laws §§ 12-9-16 & 12-9-17 (1981); Va. Code Ann. § 19.2-82 (Michie 1992). Our Constitution does not require such appearance.

her discretion, retain jurisdiction to oversee the implementation of our decision. In order to avoid sudden disruption of the current system, a reasonable period of time may be allowed by the single justice for such implementation.

*So ordered.*